D AY  P ITNEY  LLP
1 Jefferson Road
Parsippany, NJ 07054
(973) 966-6300

A TTORNEYS  F OR  P LAINTIFF

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURE MEDIA GROUP, LLC, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| FCB WORLDWIDE, INC., | **VERIFIED COMPLAINT** |
| Defendant. | **AND DEMAND FOR JURY TRIAL** |

Plaintiff, Cure Media Group, LLC, by its attorneys, Day Pitney LLP, as and for its Verified

Complaint against defendant, alleges:

93463515.4

**PRELIMINARY STATEMENT**

This is an action by Plaintiff Cure Media Group, LLC ("Cure") against Defendant FCB Worldwide, Inc. ("FCB") for trademark infringement and trademark dilution. Cure seeks preliminary and permanent injunctive relief. Plaintiff is the owner of the trade name and trademark CURE. Under this mark, Plaintiff publishes CURE Magazine, which is devoted to cancer research, care, treatment and survival. It is the largest magazine in the country with this focus. Building on the goodwill and reputation of CURE Magazine and the CURE mark, Plaintiff also offers a suite of CURE-branded marketing and advertising services to pharmaceutical companies. Defendant is part of one of the world's largest advertising and marketing organizations and offers competing strategic marketing and professional communications services to pharmaceutical companies. Plaintiff's claims arise out of Defendant's recent rebranding of an entire advertising agency to the identical name, CURE, focusing exclusively on advertising and communications for the pharmaceutical industry. Plaintiff alleges as follows, upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

**JURISDICTION AND VENUE**

1.      This action arises under the federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, and related state statutes and the common law. This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. §§ 1116, 1121, and pursuant to 28 U.S.C. § 1338(a) and (b). The Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a), and under principles of pendent jurisdiction.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is doing and transacting business in this Judicial District; Defendant has substantial contacts with and/or may be found in this Judicial District; a substantial portion of the events at issue have arisen

- 2 -

93463515.4

and continue to occur in this Judicial District; and Defendant has committed the tortious acts complained of herein in this Judicial District, among others.

## PARTIES

3.      Plaintiff Cure Media Group, LLC is a New Jersey limited liability company having a principal place of business at 666 Plainsboro Road, Building 300, Plainsboro, New Jersey 08536.

4.      Defendant FCB Worldwide, Inc. is a Delaware corporation with its principal place of business at 100 W. 33rd St., New York, NY 10001 and is operating the business that is the subject of this Complaint from an office located in this Judicial District and Vicinage at 5 Sylvan Way, Parsippany, NJ 07054.

## FACTS

**A.      CURE Is a Strong Trademark and is Closely Associated with Plaintiff's Goods and Services**

5.      Cure is a developer of editorial, advertising, and educational content directed to both healthcare providers and a general readership.

6.      Cure's flagship product is CURE magazine, the largest consumer publication in the United States devoted to every stage of the cancer experience (the "CURE Magazine"). Cure Magazine has been in existence for nearly fourteen (14) years and has attained a readership in excess of 1 million, comprised of both healthcare professionals and interested lay people. Through Cure's efforts on CURE Magazine, CURE has become synonymous with impactful writing with in-depth coverage and education on all aspects of cancer diagnosis, care, treatment, research, advocacy, and survival. CURE Magazine exists in both print and on-line forms and is distributed to cancer patients, cancer centers, healthcare providers, researchers, and advocacy groups.

93463515.4

7.     CURE Magazine is well known in the medical marketing and advertising industry; in 2009 the industry publication *Medical Marketing & Media* named CURE Magazine a "Finalist" in the "Best Healthcare Consumer Publication" category.

8.     Cure maintains an active and high-profile presence on the Internet at www.curetoday.com, which contains both editorial and advertising content.

9.     CURE Magazine is also associated with a suite of other products and services offered by Cure under the CURE mark, including but not limited to live conferences, video content, a national nursing award, continuing medical education seminars, clinical symposia, custom publications, and webinars that extend and expand upon materials that may be present in the magazine.

10.    Cure maintains strong relationships with over sixty (60) of the highest profile cancer research centers and advocacy foundations, offering a platform for news and research updates, advertising and sponsorship of events.

11.    Cure is also involved in coordinating awareness and fundraising efforts for cancer research and has recently sponsored and coordinated the MOVING MOUNTAINS FOR MULTIPLE MYELOMA event that was co-sponsored by Takeda Pharmaceuticals.

12.    CURE Magazine is reliant upon advertisers to maintain sustainability. Pharmaceutical companies are the primary base of advertisers for CURE Magazine and its on-line presence and educational conferences.

13.    Cure leverages the expertise and reach obtained with its CURE Magazine to offer CURE-branded strategic marketing, advertising, communications, and educational outreach advice to pharmaceutical companies (the "CURE Communications services").

93463515.4

14.     The CURE Communications services to pharmaceutical companies include development of television and video advertising, design of print and on-line advertisements, strategic media purchasing, conference sponsorship, and other forms of marketing and advertising advice and projects to expand drug awareness and understanding.

15.     CURE Communications services employs a full-time Creative Director to assist pharmaceutical clients in developing advertising and marketing materials to run across the spectrum of CURE media.

16.     Cure works directly with pharmaceutical Product Managers, Marketing Directors and Chief Marketing Officers to develop strategic marketing and media plans and can produce a full suite of advertising and marketing materials for pharmaceutical clients.

17.     Cure has developed significant source credibility under the CURE mark and is highly regarded among its readers, contributors, and advertisers and is known as a trusted partner and premier provider of services in the industry.

**B.      Plaintiff's Well-Established Trademark Rights**

18.     In addition to Cure's long history of use of CURE as a trade name and trademark, Cure also is the owner of the following United States Trademark Registrations for a family of CURE marks and formatives thereof (the "Cure Marks"):

| Mark: | Reg. No. | Covered Goods and Services: |
|-------|----------|------------------------------|
| CURE  | 4738860  | Class 16 - Publications, namely, magazines in the fields of medicine, healthcare, and cancer |
| CURE  | 4747504  | Class 9 – Downloadable electronic publications in the nature of magazines, newsletters, monographs, patient guides, and articles in the field of medicine, healthcare, and/or oncology<br><br>Class 41 – Providing on-line publications in the nature of articles, newsletters, monographs, patient guides, |

- 5 -

| | | and journals in the medicine, healthcare, and/or oncology; Providing a website featuring non-downloadable articles, newsletters, monographs, and journals in the fields of medicine, healthcare, and/or oncology; Educational services, namely, conducting conferences, seminars, and meetings in the fields of medicine, healthcare, and/or oncology and distribution of materials in connection therewith<br><br>Class 44 - Providing an internet website portal featuring medical and healthcare information |
|---|---|---|
| CURE CONNECTIONS | 4838350 | Class 44 - Providing an internet website portal featuring medical and healthcare information in the form of non-downloadable video recordings with health information for patients and caregivers; providing medical information via video communication platform featuring expert clinicians, patients and caregivers participating interactive discussions focusing on issues related to disease diagnosis and the treatment journey |
| CURETV | 4823766 | Class 41 - Providing a website featuring non-downloadable videos in the medical and healthcare fields featuring in depth reports, interviews, feature segments, and profiles of leaders in healthcare as well as patients; educational services, namely, a continuing program about medical and healthcare accessible by the web; production of health and medical related television programming |
| CURE CANCER UPDATES, RESEARCH & EDUCATION | 2800273 | Class 16 - Printed matter, namely, periodicals and journals featuring information on cancer research and education |

19.    In accordance with Sections 7(b), 22 and 33(a) of the Lanham Act, Plaintiff's registration of the Cure Marks constitutes prima facie evidence of the validity of such trademarks and registrations thereof, Plaintiff's ownership of the marks shown in said registrations, and Plaintiff's exclusive right to use the marks in commerce in connection with the services named therein, without condition or limitation.

20.     Plaintiff's registration of the Cure Marks on the Principal Register constitutes constructive notice to Defendant of Plaintiff's claim of ownership of the trademarks shown within such registrations.

21.     By virtue of the high quality of the Plaintiff's CURE Magazine and Cure Communications services, along with the considerable distribution, advertising, readership and presence of CURE Magazine in the healthcare and pharmaceutical industries, Plaintiff has built up significant valuable goodwill in its CURE trademark and CURE family of marks, which is immeasurable to Plaintiff.

22.     As a result of Plaintiff's continuous use of the distinctive CURE name and mark and the commercial success of its Cure Magazine and Cure Communications services under this mark, Plaintiff has achieved substantial goodwill in the CURE name and mark.

23.     The CURE name and mark have come to represent the valuable goodwill and reputation of Cure as a provider of accurate, relevant, and comprehensive healthcare publishing, advertising and professional communications services. As a result, lay readers, healthcare providers, researchers, and pharmaceutical companies have come to know that goods and services marketed under the CURE name and mark are of the highest quality and exclusively associated with Plaintiff.

24.     Accordingly, Plaintiff owns strong and protectable trademark rights to the CURE name and mark, including its federal registrations and all common law trademark, service mark and trade name rights.

**B.      FCB's Irresponsible Adoption of CURE for Pharmaceutical Advertising Services**

25.     Defendant FCB is a member of the Interpublic Group, one of the world's largest communications, advertising and marketing companies.

- 7 -

93463515.4

26.     FCB is composed of a number of operating divisions or agencies that each specialize in a particular service or industry.

27.     FCB Health is a unit of FCB and focuses its efforts on communications, advertising, education and marketing for pharmaceutical and healthcare companies.

28.     FCB Health further has a number of sub-divisions or agencies under the names FCB HEALTH, ICC, AREA 23, NEON, PACE and TRIO.

29.     On January 4, 2016, FCB announced that it was merging the ICC and PACE divisions of FCB Health into one new entity to be rebranded as CURE, with offices located in Parsippany, New Jersey ("FCB Cure").

30.     FCB's Cure will operate only in the United States and will continue to service pharmaceutical companies, as it did under the ICC and PACE names, for communications, advertising and marketing matters.

31.     FCB's January 4, 2016 press release stated that:  *"The agency plans to be the cure for what typically plagues the healthcare advertising industry today – lack of insights, bad ideas, poorly served clients, minimal transparency between clients and agencies, and tired, boring agency thinking."*

32.     FCB's proposed "Cure" name is identical to and directly appropriates Plaintiff's CURE name and mark.

33.     FCB Cure offers the same types of communications, advertising and marketing services as Cure does under its CURE mark which includes strategic media planning and advertising purchasing advice.

34.     FCB Cure specializes in pharmaceutical advertising.

- 8 -

35.   FCB Cure will advise pharmaceutical advertisers on strategic advertising placement, sponsorship, and distribution of advertising and marketing materials; these services will directly compete with the same services provided by Cure to pharmaceutical companies.

36.   FCB Cure and Cure will both be competing for the same media and marketing budgets from pharmaceutical companies, both seeking placement of pharmaceutical advertising in various outlets.

37.   Defendant is in the same general field as Plaintiff—the strategic development of how a pharmaceutical company may most effectively advertise, market and educate lay readers and healthcare professionals about the efficacy and need for its products.

38.   Defendant's services offered under the FCB Cure name and mark are targeted to the same customers as Cure's services. Thus, overlap between Plaintiff's CURE name and mark and the FCB Cure name and  mark in the marketplace is certain and will be pervasive.

39.   With two CURE branded companies both providing strategic media and advertising proposals to the same pharmaceutical companies, confusion is more than likely.

40.   FCB Cure has adopted the domain name www.cure-hc.com.

41.   Given Cure's well-known CURE mark, the large readership and distribution of CURE Magazine, the parties' competing services, and the heightened sensitivity to those in the marketing field of trademark issues, Defendant, on information and belief, was well aware of Cure's CURE mark at the time it made the decision to rebrand.  Defendant knowingly and willfully adopted an identical mark, namely CURE, for use in connection with competitive services, specifically in the field of strategic marketing, advertising and communications.

93463515.4

**D.**      <u>FCB Appreciates the Likelihood of Confusion</u>

42.      On January 7, 2016, Plaintiff's counsel sent a letter to Defendant asking it to cease its infringement of Plaintiff's CURE name and mark.  See Attached <u>Exhibit A</u>.

43.      On January 15, 2016, Defendant responded through in-house counsel and indicated that FCB does not want to be confused with Plaintiff and that such confusion could lead to the belief that FCB's agency only operates in the cancer and oncology fields for which CURE is widely known.  See attached <u>Exhibit B</u>.

44.      To "distinguish" itself from Cure, FCB said it will change the name of the newly re-branded agency to FCBCURE.

45.      FCB's January 15, 2016 letter tacitly admits that confusion is likely to occur if FCB proceeds with use of "Cure".

46.      FCB has not taken any steps to adopt FCBCURE.

47.      Appending Defendant's FCB house mark to the otherwise identical CURE mark will not distinguish the parties and will instead, extinguish Plaintiff's trademark through the larger size, power and breadth of the FCB name.

48.      Adopting the name FCBCURE will also confuse consumers and lead them to believe that the parties are related or that there is an affiliation between Cure, CURE Magazine, and the Cure Communications services and the services of FCB.

49.      As of February 2, 2016, FCB informed Cure that it would not abandon use of CURE or any similar formative that contains the term CURE.

- 10 -

**E.**     **Confusion is Likely if FCB uses CURE in any Fashion**

50.     Consumers and professionals in the healthcare, pharmaceutical and advertising industry are likely to believe that Defendant's FCB Cure is related to, affiliated with or endorsed by Plaintiff.

51.     Defendant's use of the FCB Cure name and mark is likely to cause confusion, mistake or deception as to the source of the services offered under the FCB Cure name and mark.

52.     Given the identical nature of the base marks, notwithstanding any FCB Prefix, customers familiar with Plaintiff's longstanding sale of goods and services under the CURE name and mark are likely to assume, incorrectly, that Defendant's services provided under the FCB Cure marks originated with Plaintiff or that there is an affiliation between the parties, or that Plaintiff has sponsored, endorsed, or approved Defendant's services.

53.     Defendant adopted the infringing FCB Cure mark and registered the domain name www.cure-hc.com, without adequately clearing the rights to the mark and domain name, and/or with reckless disregard for the prior existing rights of Cure.

54.     Given Defendant's larger resources for advertising, and the identical nature of the marks, the possible clients exposed to the FCB Cure name and mark or any variation thereof that includes "Cure," are likely to assume, incorrectly, that Plaintiff's goods and services provided under the CURE name and marks originated with Defendant or that there is an affiliation between the parties, or that Defendant has sponsored, endorsed, or approved Plaintiff's goods or services.

55.     Additionally, as a subsidiary of the largest communications, advertising and marketing agency in the world, Defendant is likely to saturate the marketplace with advertising using the FCB Cure name and mark. Any such campaign will inevitably dilute and vitiate the valuable reputation that Plaintiff has carefully built up over many years. Worse yet, the

93463515.4

consuming public might mistake Plaintiff, despite its priority of use, as the second-user and infringer, due to Defendant's massive marketing ability, thereby injuring Plaintiff's goodwill.

56.     Defendant's advertising campaign has already begun, with press releases and announcements in industry publications, including a story in *Medical Marketing & Media*, and job announcements highlighting Defendant's use of and change over to the FCB Cure name and mark along with a dedicated webpage hosted at www.cure-hc.com.

57.     Defendant's offering of its services under the FCB Cure name and mark improperly trades off the goodwill established by Plaintiff in the industry.

58.     Despite having notice of Plaintiff's rights, Defendant has continued its plans to widely market its services under the FCB Cure name and mark, and willfully and knowingly continues to market its services under the FCB Cure name and mark, without authorization from Plaintiff and in complete disregard of Plaintiff's rights.

59.     Further, despite Plaintiff strenuously maintaining its objection to the FCB Cure name and mark, and discussions and efforts to reach a resolution to this dispute since the January 7, 2016 letter, to date, FCB continues to infringe Plaintiff's rights by using the FCB Cure name and mark.

60.     Defendant, by the acts complained of herein, has infringed and continues to infringe Plaintiff's CURE name and mark, to dilute the unique commercial impression of Plaintiff's CURE name and mark, and otherwise improperly to usurp the reputation and goodwill of Plaintiff to promote its competitive services, which are not connected with, authorized, approved, licensed, produced or sponsored by, Plaintiff.

61.     The natural, probable and foreseeable results of Defendant's wrongful conduct has been and will continue to be to deprive Plaintiff of the benefit of its exclusive right to use its

CURE mark, to deprive Plaintiff of the associated goodwill, and to injure Plaintiff's relations with its present and prospective customers.

62.    The aforesaid acts of Defendant have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## FIRST COUNT

### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION
### AND FALSE ADVERTISING (FEDERAL)

63.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 62 as if set forth herein.

64.    Defendant's unlawful and improper actions as set forth above are likely to cause confusion, mistake or deception as to the source, origin or sponsorship of Defendant's services, and to falsely mislead others into believing that Defendant's services originate from, are affiliated or connected with, or are licensed, sponsored, authorized, approved or sanctioned by Plaintiff, or that Plaintiff's services and goods are licensed, sponsored, authorized, approved, or sanctioned by Defendant.

65.    Defendant's activities create the false impression and/or are likely to mislead consumers to believe, *inter alia,* that Defendant's services are affiliated or connected with, or are licensed, sponsored, authorized, approved or sanctioned by Plaintiff, or that Plaintiff's services and goods are licensed, sponsored, authorized, approved, or sanctioned by Defendant, thereby misleading the medical services community.

- 13 -

66.    Accordingly, Defendant's activities constitute an infringement of Plaintiff's registered and common law CURE Marks, unfair competition and false advertising in violation 15 U.S.C. §§ 1114(1) and 1125(a).

67.    Defendant's acts of infringement have caused Plaintiff to sustain damage, loss, and injury.

68.    Defendant has engaged and continues to engage in these activities knowingly and willfully, so as to justify the assessment of enhanced damages under 15 U.S.C. § 1117.

69.    Defendant's acts of infringement, unless enjoined by this Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

## SECOND COUNT

## TRADEMARK INFRINGEMENT (STATE)

70.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 69 as if set forth herein.

71.    Defendant's aforesaid activities constitute use of an identical imitation of Plaintiff's mark in connection with the sale of goods or services that is likely to cause confusion or mistake or to deceive as to the source of origin of the services in violation of New Jersey Statute § 56:3-13.16.

72.    Defendant's acts of trademark infringement have caused Plaintiff to sustain damage, loss and injury, in an amount to be determined at the time of trial.

73.    Defendant has engaged and continues to engage in this activity knowingly and willfully, so as to justify the assessment of treble damages against them, attorneys' fees, and court costs.

- 14 -

93463515.4

74.     Defendant's acts of trademark infringement, unless enjoined by this Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

### THIRD COUNT

### TRADEMARK AND SERVICE MARK INFRINGEMENT
### AND UNFAIR COMPETITION (COMMON LAW)

75.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 74 as if set forth herein.

76.     Defendant's unlawful and improper actions as set forth above are likely to cause confusion as to the source, sponsorship or legitimacy of the services sold by Defendant; misappropriate and trade upon the reputation and goodwill of Plaintiff in the CURE name and mark, thereby injuring that reputation and goodwill; and unjustly divert from Plaintiff to Defendant the benefits arising therefrom.

77.     Defendant's unlawful activities constitute trademark infringement, unfair competition, and misappropriation as proscribed by the common law.

78.     Defendant's acts of trademark infringement, unfair competition and misappropriation have caused Plaintiff to sustain damage, loss, and injury, in an amount to be determined at the time of trial.

79.     Defendant has engaged and continues to engage in this activity knowingly and willfully, so as to justify the assessment of increased and punitive damages against them, in an amount to be determined at the time of trial.

80.     Defendant's acts of trademark and service mark infringement, unfair competition and misappropriation, unless enjoined by this Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

- 15 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cure Media Group, LLC respectfully prays for judgment as follows:

A.      For a preliminary and permanent injunction against Defendant and each of its affiliates, officers, agents, servants, employees and attorneys, and all persons in active concert or participation with it who receive actual notice of the Order, by personal service or otherwise (collectively, "Defendant"):

1.      Restraining and enjoining Defendant from using the "Cure" name and mark (however spelled, whether capitalized, abbreviated, singular or plural, printed or stylized, whether used alone or in combination with any word or words, and whether used in caption, text, orally or otherwise), or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the "Cure" name and mark: (1) as a trade name, trademark, service mark, brand name, domain name, business or commercial designation; (2) as the name of any pharmaceutical or healthcare advertising, marketing, communications or publishing service; (3) in operating, maintaining or using a web site or domain name that incorporates the infringing CURE mark on the Internet, or other Internet uses; or (4) in any other manner suggesting in any way that Defendant and/or its activities, services or products originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiff, or that Plaintiff and/or its activities, services or products are affiliated in any way with Defendant.

2.      Restraining and enjoining Defendant from using any other mark, term, slogan, tag line or phrase which suggests or tends to suggest in any way that Defendant and/or its activities or services originate from, are affiliated with, or are sponsored, authorized, licensed,

approved or sanctioned by Plaintiff, or that Plaintiff or its services or activities are affiliated in any way with Defendant.

3.      Restraining and enjoining Defendant from using in connection with any goods or services, any false or deceptive designation, description or representation, whether by words or symbols, which suggests or implies any relationship with Plaintiff, or gives Defendant an unfair competitive advantage in the marketplace, or constitutes false advertising;

4.      Restraining and enjoining Defendant from violating New Jersey Statute § 56:3-13.16.

5.      Restraining and enjoining Defendant from engaging in any acts of common law trademark infringement, unfair competition or misappropriation which would damage or injure Plaintiff.

6.      Restraining and enjoining Defendant from inducing, encouraging, instigating, aiding, abetting, or contributing in any third-party usage of the "Cure" name and mark in connection with Defendant's business.

B.      For transfer of the Domain Name www.cure-hc.com to Plaintiff.

C.      For an award of Defendant's profits or other advantages and Plaintiff's damages resulting from Defendant's unlawful acts set forth herein, in an amount to be proven at the time of trial, together with legal interest from the date of accrual thereof.

D.      For an award requiring Defendant, at its own expense, to furnish and distribute corrective marketing literature in a form to be approved by Plaintiff.

E.      For an award of exemplary and punitive damages and/or increased profits, in an amount to be proven at the time of trial.

93463515.4

F.      For an award of attorneys' fees and disbursements incurred by Plaintiff in this action.

G.      For an award of costs in this action.

H.      That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

WHEREFORE, Plaintiff Cure Media Group, LLC prays that this Court grant the relief it seeks, as well as all other relief which this Court deems just and appropriate.


Date: February 3, 2016                              Respectfully submitted,

                                                    **DAY PITNEY LLP**

                                                    *Attorneys for Plaintiff,*
                                                    *Cure Media Group, LLC*


                                                    By: */s/ Mark Salah Morgan_____*
                                                            Mark Salah Morgan
                                                            A Member of the Firm
                                                            Day Pitney LLP
                                                            One Jefferson Rd.
                                                            Parsippany, NJ 07054-2891
                                                            Tel: (973) 966-8067
                                                            Fax: (973) 206-6692
                                                            Email: mmorgan@daypitney.com

- 18 -

93463515.4

**VERIFICATION**

I, Neil Glasser, Chief Operating Officer and Chief Financial Officer of Cure Media Group, LLC, have read the foregoing Verified Complaint and Jury Demand. Based on my personal knowledge, I hereby certify under penalty of perjury that the statements set forth in this Verified Complaint are true and correct.

Dated:   February 3, 2016

_____
NEIL GLASSER

93463515.3

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Date: February 3, 2016

<u>*/s/ Mark Salah Morgan*</u>
Mark Salah Morgan
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ 07054-2891
Tel: 973-966-8067
Fax: 973-206-6692
E: mmorgan@daypitney.com

93463515.4

## <u>CERTIFICATION OF SERVICE</u>

I, Mark Salah Morgan, hereby certify that on this day I caused a copy of the within: (1) Verified Complaint; (2) accompanying proposed Order to Show Cause with Temporary Restraints; (3) Memorandum of Law in Support of the Order to Show Cause with Temporary Restraints; and (4) a proposed order entering a preliminary injunction, to be filed with the Court and served on Defendant's associate general counsel, Ricki Schweizer, by e-mail at: ricki.schweizer@interpublic.com.


Date: February 3, 2016                    */s/ Mark Salah Morgan*
                                          Mark Salah Morgan
                                          DAY PITNEY LLP
                                          One Jefferson Road
                                          Parsippany, NJ 07054-2891
                                          Tel: 973-966-8067
                                          Fax: 973-206-6692
                                          E: mmorgan@daypitney.com

93463515.4

Exhibit A

# DP DAY PITNEY LLP

BOSTON    CONNECTICUT    NEW JERSEY    NEW YORK    WASHINGTON, DC

**MARK SALAH MORGAN**
Attorney at Law

One Jefferson Road
Parsippany, NJ 07054-2891
T: (973) 699-8067 F: (973) 206-6692
mmorgan@daypitney.com

January 7, 2016

**VIA E-MAIL and UPS**  (Christine.finamore@cure-hc.com; Thomas.millar@cure-hc.com)

Ms. Christine Finamore, Managing Director
Mr. Tom Millar, Managing Director
Cure, a FCB Health Company
5 Sylvan Way
Parsippany, NJ 07054

Re:   Cure Media Group, LLC
      Unauthorized Use of the CURE Trademark
      Our Ref. No:  780658-000030

Dear Ms. Finamore and Mr. Millar:

We represent Cure Media Group, LLC ("Cure") in connection with intellectual property matters.  As you surely know, Cure publishes CURE magazine, the premier publication for consumers and healthcare providers focused on the patient experience of cancer and other chronic illnesses, such as hepatitis C.  The magazine, launched in 2002, has a circulation of over 300,000 individual subscribers, including individual cancer patients, cancer centers, care providers, pharmaceutical companies, and advocacy groups.

In addition to its print publication and website at curetoday.com, Cure also provides robust advertising and marketing services to pharmaceutical companies in the cancer field. Specifically, the Cure Media Group leverages its expertise in the field of the cancer experience to provide pharmaceutical and drug companies with marketing and advertising solutions such as awareness campaign materials, brochures, promotional and educational materials, and a suite of media marketing services, including digital and mobile marketing, producing video series, and organizing and hosting award ceremonies and events.  The reputation and high quality of Cure's editorial content, subscriber base, and advertising reach hade it a sought out and trusted partner for curated pharmaceutical content.

The CURE trademark is a major asset of Cure, and an important symbol of its reputation and good will. Cure has widely used and promoted the CURE mark throughout the U.S.,

93292971.2

**DAY PITNEY** LLP

FCB Health
Merger of ICC and Pace into Cure
December 16, 2015
Page 2

building a brand reputation and developing strong consumer and industry recognition.  Cure owns several U.S. Trademark Registrations for the CURE mark (U.S. Reg. Nos. 4738860 and 4747504) for publications and services in the field of medicine as well as a family of CURE-formative marks including CURE CONNECTIONS (U.S. Reg. No. 4838350), CURETV (U.S. Reg. No. 4823766) and CURE CANCER UPDATES, RESEARCH and EDUCATION (U.S. Reg. No. 2800273).

Cure's federal registration and extensive use of the CURE mark afford it the exclusive right to use the CURE name and mark in association with publications as well as marketing and advertising services within the medical field, as well as the right to prevent others from using the same or similar mark in a way that is likely to cause confusion among consumers.  In light of the importance of this mark to Cure, and of the strength of Cure's legal rights to its valuable intellectual property, as a brand-owner, Cure must take whatever steps are necessary to protect its rights in the CURE mark and preserve the brand's integrity and reputation.

Cure recently became aware that your company announced its intention to adopt the identical name CURE as a brand in connection with a marketing services agency in the field of medicine and healthcare. The merger of ICC and Pace into a single medicine and healthcare marketing agency under the name CURE would provide services to various pharmaceutical and drug companies, such as  Abbvie, Actavis, Amgen, Janssen Pharmaceuticals, and Vertex, all of which have oncology divisions and specific treatments for various types of cancer.

For years Cure has routinely works with many of these same companies to provide marketing and advertising services and solutions.  Your company's adoption of an identical mark for identical marketing services targeting overlapping consumers is certain to cause consumer confusion.  Such confusion and deception puts Cure and its brand reputation at risk of irreparable injury because it has no ability to control the quality of products and services offered by your company.  Further, your use of the CURE name risks diluting the strength of the well-known CURE brand name.  Given the well-known status of Cure and its CURE brand publication and advertising services, our client is surprised that FCB Health would adopt an identical name for clearly overlapping services within the same industry.

As a brand-owner, you can appreciate that Cure cannot tolerate the simultaneous use of an identical mark for competing services. While Cure would prefer to resolve this matter amicably without resorting to litigation, in order to do so, Cure requires your full cooperation and immediate compliance with the following:

1.  Cease and desist from any and all use of the CURE name, including any word or combination of words that is similar to, or that is likely to cause confusion with the CURE mark;

**DAY PITNEY** LLP

FCB Health
Merger of ICC and Pace into Cure
December 16, 2015
Page 3

2.  Remove all references to "Cure" from your websites, all social media accounts, and other company promotional materials; and

3.  Agree not to register or seek registration of the mark CURE or any word or combination of words that is similar to, or that is likely to cause confusion with the CURE mark.

Please confirm by **January 15, 2016** whether your company and FCB Health intend to comply with Cure's demands.  If we do not hear from you by this deadline, we will assume that you do not intend to cooperate and will pursue all necessary avenues to protect Cure's valuable intellectual property.

Please contact the undersigned if you have any questions or comments, or would like to discuss a swift resolution of the matter.

This letter is without prejudice to any claims or remedies Cure may have in connection with this matter, all of which are expressly reserved.

We look forward to working with you to promptly and efficiently resolve the issue.

Sincerely,

Mark Salah Morgan

93292971.2

# Exhibit B

RICKI J. SCHWEIZER
Associate General Counsel

Interpublic Group
100 West 33rd Street
New York, NY 10001

Ricki.schweizer@interpublic.com
PH: (212) 885-2870
FAX: (212) 885-2823

**VIA EMAIL** (mmorgan@daypitney.com; agarens@daypitney.com)

January 15, 2016



Mark Salah Morgan, Esq.
Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054-6692

Dear Mr. Morgan:

We are in receipt of your letter dated January 7, 2016 on behalf of the Cure Media Group, LLC ("Cure") and are responding on behalf of the FCB Health companies which includes Cure, an FCB Health Company (formerly known as ICC) ("FCB").

We have reviewed the information in your letter including the trademark registrations held by Cure and continue to believe that there are significant differences between the goods and services enumerated on those registrations and the goods and services provided by FCB's agency. Nevertheless, FCB in no way wishes to be confused with the Cure you represent inasmuch as that confusion might lead to a belief that FCB's agency only deals with matters in the cancer and oncology fields. This would be a substantial diminution of the breadth of services that FCB's agency provides. Consequently, FCB has decided to change the name of this agency to FCBCURE which will distinguish it from any other company that might use CURE in its mark. The FCB mark has been used for advertising and marketing services for over 50 years and is well established and reknowned in its field. There can be no confusion when the mark begins with FCB and relates to advertising and marketing services.

We appreciate your bringing this matter to our attention and we trust that it is now resolved.

Very truly yours,

Ricki J. Schweizer